MEYER S. ROSENTHAL AND CHARLES H. ROSENTHAL v. LOOMIS K. BISHOP AND GEORGE W. POWERS.

*Fraudulent conveyances—Chattel mortgage—Evidence.*

1. A chattel mortgage given to secure an existing indebtedness, and the payment of the price of a bill of goods which the mortgagor has ordered, is valid.

2. Where in a suit involving the *bona fides* of a chattel mortgage given by a druggist to a firm of liquor dealers, with whom he had dealt for several years, to secure an existing indebtedness and the price of a bill of liquors which the mortgagees claim had been ordered by the mortgagor, the mortgagor denies ever ordering the liquors, and testifies that the mortgage was given for the larger amount in fraud of other creditors, it is competent for the assailants of the mortgage to show, as bearing upon the probabilities, in what quantities the mortgagor had usually ordered liquors of the mortgagees, and that the alleged order was an unusual one, and out of all proportion to the business then being carried on by the mortgagor.

3. Where, in such a case, the mortgagees introduce evidence to show that at the request of the mortgagor, made subsequently to the execution of the mortgage, they did not ship the goods ordered, but credited the price of the same upon the mortgage, and the mortgagor claims that the writing containing such request was made by him at the instance of the mortgagees, and that the goods mentioned had never been ordered, it is error for the court to refuse to instruct the jury, at the request of the attaching creditors of the mortgagor, that any arrangement between the parties, by which the amount of the mortgage was reduced to the sum actually due, would not save the security, if the mortgage was fraudulent in its inception.

Error to Kent. (Grove, J.) Argued January 4, 1894. Decided January 26, 1894.

Replevin. Defendants bring error. Reversed. The facts are stated in the opinion.

*Peter Doran,* for appellants.

*J. A. Fairfield* and *McGarry, McKnight & Judkins,* for plaintiffs.

McGRATH, C. J.   Plaintiffs, residing and doing business in Cincinnati, Ohio, bring replevin under a chattel mortgage for goods seized in attachment.   Defendants insist that the mortgage was given to hinder and delay creditors. It is admitted that there was less than $500 due to the mortgagees from the debtor when the mortgage was given. The mortgage was for $1,500, and was executed December 26, 1889.   Wilson, the mortgagor, testified that the mortgage was suggested by plaintiffs, who told him that it would tide him over; that its object was to keep his creditors off until he could make collections, and tide him over. Plaintiffs insisted that in the early part of December a bill of goods had been ordered by the debtor, amounting to over $1,100, and that the mortgage was given to secure that amount, as well as the amount then due.

The court instructed the jury that if the mortgage was given to cover an existing indebtedness, and the bill of goods which had been ordered by the debtor, the mortgage would be valid.   As an abstract proposition, this would be true; but the difficulty with the case is that the debtor swears positively that no bill of goods had been ordered by him, and that no invoice thereof had been sent him. Plaintiffs offered in evidence the following letter, dated January 9, 1890:

"To H. ROSENTHAL & SONS,
          " Cincinnati, O.
    *"Gentlemen:*   The annexed bill of goods I received by mail from your house, and will say that financial embarrassment renders it impossible for me to take the balance of the goods I ordered of you.   I therefore hereby release you from sending balance of said goods, being in amount $1,079.96, upon condition that that amount be indorsed on the chattel mortgage I executed to your house on the 26th day of December, 1889, leaving the balance due on

said mortgage the sum of $420; which said mortgage was given to secure the purchase price of the said amount of $1,079.96, and other goods heretofore received by me.

"Yours, &c.,

"MADISON V. WILSON.

"Dated Jan. 9, 1890."

In connection with said letter, an invoice of goods, amounting to over $1,100, dated December 7, 1889, was offered. Indorsed upon the invoice was the following:

"*Dear Sir:* The above lot of goods are ready, and stored subject to your order. We will forward to you as soon as our account is paid, or the whole amount is secured to us, as you promised when you were here.

"H. ROSENTHAL & SONS."

The plaintiffs sought, by the introduction of the letter with invoice attached, to show that the invoice antedated the mortgage. There is no testimony in the case, except this letter, from which any inference can fairly be drawn that any such bill of goods had been ordered by the debtor, or any such invoice received. Wilson testifies that, at midnight of the day upon which the letter bears date, he was called out of bed, that the letter, already prepared, was presented to him by plaintiffs' attorney, and that he signed it, but that he had not seen the invoice attached to the letter before this time. The attachment suit was commenced December 29, 1889; but, for some reason, that suit was discontinued, and another instituted on January 29, 1890. One of the plaintiffs was sworn as a witness; and no attempt was made to show by him that any bill of goods had been sold to, or ordered by, or charged to the debtor, except such as were covered by the actual indebtedness existing at the time the mortgage was given. The attorney who prepared the chattel mortgage, and who appeared for plaintiffs in this suit, was plaintiffs' principal witness. He admits that he in person prepared the letter

98 MICH.—34.

which the debtor signed, and that he called the debtor out
of bed at midnight to sign the same. This witness testified
that, at the interview in which he was directed to prepare
the chattel mortgage, one of the plaintiffs, the debtor, and
the witness were present. He says:

" It was agreed that the mortgage and note should be
for $1,500. Mr. Wilson stated that he owed him this
amount that they talked about, and that was agreed upon.
The amount of the whisky that he was to receive was also
agreed upon. It was to be sent forward."

· Again he says:

" Mr. Rosenthal then proceeded to state that Wilson was
indebted to him to an amount of $200, or $300, or $400,
whatever it was,—of course, I could not tell the exact
amount of the figures,—and that he was going to let him
have some more liquors, and Mr. Wilson was to give him
security on his entire stock for what he owed him, and
what he was going to ship forward. * * * And after
they had ·talked over about the liquors coming, and the
amount due, it was agreed that $1,500 should be the
amount written in the mortgage. * * * Mr. Rosenthal
said he would send the liquors to make up the difference
between the amount of the bill, that Wilson owed him, as
they agreed upon."

Relative to the invoice attached to this· letter, the wit-
ness says:

" The paper attached contains a recital showing how he
received it. I don't know when he gave me that paper.
I cannot say. I can't tell whether I got that paper from
Mr. Rosenthal or from Mr. Wilson. It came into my hands
before that paper was drawn; and whether Mr. Wilson gave
me that at the time, or whether it ʻwas handed to me at
the time the mortgage was drawn, I cannot tell, or where
I got hold of it I don't know. It is dated December 7;
but, now, whether I got it at the time the ·mortgage was
drawn, and left with it, or whether Wilson gave it to me,
or Rosenthal, I cannot tell."

In view of the positive testimony that no goods had
been ordered by the debtor; that no bill had been received

by the debtor; and that the invoice referred to was first
seen by him when he signed the paper dated January
9,—these desultory statements cannot be said to tend to
show that an order had at that time been actually given,
that the invoice had been sent to the debtor, or had been
furnished by the debtor when the letter was signed.    If
the order had been given for the goods in question, it was
in plaintiffs' power to show the fact.    If no order had in
fact been given prior to the date of the mortgage, the
antedating of the invoice, the indorsement upon the
invoice, and the circumstances attending the procurement
of the debtor's signature to the letter of January 9 were
inconsistent with an honest purpose.  If the mortgage was
given to cover an invoice of goods which had been ordered,
but not received, the fact of such order was susceptible of
proof, and it was unnecessary to secure the letter.    The
procurement of such letter, and the circumstances under
which it was obtained, throw a suspicion upon the transac-
tion, which the testimony in this record does not repel.

Defendants, in their third request, sought to direct the
attention of the jury to the attempted decrease of the
amount of the mortgage, and it was error to refuse the
request.

The defendants should have been allowed, as bearing upon
the probabilities, to show in what quantities Wilson had
usually ordered liquors.   Plaintiffs had been supplying him
for years.   It was certainly competent to show that an
order by a druggist, doing a moderate business, for over
$1,100 worth of whiskies, was an unusual one, and out of
all proportion to the business that was being carried on by
the debtor.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.